IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

| | | |
|---|---|---|
| JAIRO MAURICIA CANALES LOPEZ, *et al.*,<br>          Plaintiffs,<br><br>          v.<br><br>COLE SHOWS AMUSEMENT CO., INC., *et al.*,<br>          Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Civil Action No. 3:24CV399 (RCY) |

## MEMORANDUM OPINION

This is a putative class action for unpaid wages under federal and local labor laws, labor trafficking under the Trafficking Victims Protection Reauthorization Act, violation of the Trafficking and Violence Protection Act, Virginia common law breach of contract, and Virginia common law fraud. The case is presently before the Court on Defendants' Motion for Partial Summary Judgment. Mot. Part. Summ. J., ECF No. 9. Therein, Defendants seek summary judgment on the claims alleging violations of certain federal and local wage payment laws, as well as Plaintiffs' common law contract claim. The matter has been fully briefed, and the Court dispenses with oral argument because the materials before it adequately present the facts and legal contentions, and argument would not aid the decisional process. E.D. Va. Loc. Civ. R. 7(J). For the reasons stated below, the Court will deny Defendants' Motion.

# I. BACKGROUND[1]

## A. Summary of Plaintiffs' Complaint

This matter stems from a putative class action brought by Plaintiffs Jairo Mauricia Canales Lopez and Herberth Josue Abilez Vasquez, on behalf of themselves and on behalf of all others similarly situated. *See generally* Compl., ECF No. 1. Plaintiffs name two Defendants: Defendant Cole Shows Amusement ("Cole Shows"), a traveling carnival business, and Defendant Richard Cole, the President of Cole Shows. *Id.* ¶¶ 11, 14.

Plaintiffs are Honduran citizens who were hired by Defendants via the H-2B program—a nonimmigrant visa program which allows American companies to bring unskilled workers to the United States to perform non-agricultural jobs on a temporary basis. *Id.* ¶¶ 2, 19 (citing 8 U.S.C. § 1101(a)(15)(H)(ii)(b)). To participate in the H-2B program, prospective employers must agree to (1) comply with relevant employment laws, (2) pay the immigrant-employees occupational or minimum wage, whichever is higher, and (3) not retaliate against workers for asserting their rights as H-2B workers. *Id.* ¶ 20 (citing 20 C.F.R. §§ 655.20, 503.16). When prospective employers submit an H-2B application, they must also submit a "job order," which contains all material terms and conditions of employment. *Id.* ¶ 21 (citing 20 C.F.R. § 655.20; 29 C.F.R. § 503.16)). Upon approval, prospective employers are issued a certification by the United States Department of Labor ("DOL"), which incorporates those material terms and conditions. *Id.* ¶ 22.

Defendants filed an H-2B application in 2022, seeking to employ thirty foreign workers as amusement and recreation attendants. *Id.* ¶ 22. The application and job order stated that the

---

[1] Typically, in reviewing a motion for summary judgment, the Court bases its understanding of the facts on the undisputed factual record, after making all "competing, rational inferences" in the light most favorable to the non-movant. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). However, the instant Motion neither necessitates such an analysis nor provides the basis for one. Accordingly, the Court merely summarizes the relevant case background as well as the parties' positions.

Defendants would schedule the workers for forty hours per week, pay between $8.94 to $12.73 per hour, and provide housing at no charge. *Id.* ¶¶ 23, 24, 30. The DOL granted Defendants' application and issued a certification. *See id.* ¶¶ 22, 25. Defendants recruited Plaintiffs with the assistance of the Honduran Secretary of Labor. *Id.* ¶¶ 25, 27.

Plaintiffs allege that, upon commencing their employment with Defendants, Defendants imposed illegal and substandard working conditions upon Plaintiffs, which violated both the terms and conditions guaranteed to Plaintiffs as well as governing labor laws. For instance, Plaintiffs allege that they worked seven days per week, often for twelve hours a day, sometimes for more than twenty-four consecutive hours with only two fifteen-minute breaks. *Id.* ¶ 34. Defendants allegedly only paid Plaintiffs $10 per hour for forty hours per week, with no pay for overtime. *Id.* ¶ 35. Finally, Plaintiffs allege that, upon confronting Defendant Cole about their insufficient pay, Defendant Cole threatened to deport them to Honduras. *Id.* ¶ 52.

Relevant to the present motion, Plaintiffs advance four claims against Defendants.[2] First, in Counts One, Two, and Four, Plaintiffs assert that the employment conditions allegedly imposed by Defendants violated the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§ 201, *et seq.*, *id.* ¶¶ 122–143, as well as the Virginia Overtime Wage Act ("VOWA"), Va. Code Ann. § 40.1-29.2, *id.* ¶¶ 155–166. In Count Six, Plaintiffs allege that they had employment contracts with Defendant, which incorporated the terms and conditions of the DOL certification as well as the "law and regulations applicable to the H-2B program"; thus, Plaintiffs assert that Defendants' alleged

---

[2] While Defendants initially sought summary judgment of Count Five, Count Five has since been voluntarily dismissed. Not. Vol. Dismissal, ECF No. 9; Order, ECF No. 14. Defendants do not, however, seek summary judgment as to Count Three (alleging a violation of the Virginia Wage Payment Act, Va. Code Ann. § 40.1-29, Compl. ¶¶ 144–154), Count Seven (alleging Virginia common law fraud, *id.* ¶¶ 190–194), Count Eight (alleging forced labor in violation of the Trafficking Victims Protection Reauthorization Act, 18 U.S.C. § 1589), or Count Nine (alleging trafficking with respect to peonage, slavery, involuntary servitude, or forced labor in violation of the Trafficking and Violence Protection Act, 18 U.S.C. § 1590, *id.* ¶¶ 205–211).

3

violations of the relevant regulatory scheme as well as their failure to abide by the obligations of the DOL certification also constituted breaches of the parties' contracts. *Id.* ¶¶ 178–189.

## B.  Summary of the Instant Motion

In the instant Motion, Defendants concede that they hired Plaintiffs via the H-2B visa program, but do not otherwise engage with Plaintiffs' allegations. Mem. Supp. Defs.' Mot. Part. Summ. J. ("Mem. Supp. Mot. Summ. J.") 2–5, ECF No. 10. Instead, Defendants make two affirmative arguments: (1) that Cole Shows is exempt from certain federal and state labor regulations as a recreational establishment; and (2) that the H2-B program cannot constitute the basis for a contract between the parties. *Id.* at 10–15. In support of the second argument, Defendants advance a purely legal theory without supporting evidence. Mem. Supp. Mot. Summ. J. 12–15. In support of the first argument, however, Defendants seek to demonstrate Cole Shows's status as an exempt recreational establishment by virtue of its 2021 receipts, which Defendant Cole recites in an attached affidavit. *Id.* at 9–10; Aff. Richard Cole ("Cole Aff."), ECF No. 10-1. Defendants do not, however, attach the actual receipts. *See* Cole Aff.

Defendant Cole's affidavit describes Defendant Cole Shows's 2021 receipts as follows:

| | |
|---|---|
| January 2021: | $9,988.80 |
| February 2021: | $4,000.00 |
| March 2021: | $3,965.15 |
| April 2021: | $74,660.50 |
| May 2021: | $764,032.52 |
| June 2021: | $608,753.98 |
| July 2021: | $582,383.91 |
| August 2021: | $979,832.59 |
| September 2021: | $573,516.80 |
| October 2021: | $343,547.54 |
| November 2021: | $231,777.97 |
| December 2021: | $11,173.98 |

*Id.* at 2.

In response, Plaintiff Lopez and Plaintiffs' counsel Marissa Baer filed their own affidavits, asserting that they were not aware of the receipts described in Defendant Cole's affidavit, have not had the opportunity to obtain them through discovery, and have no basis to determine if the affidavit accurately describes Defendant Cole Shows's income.  Decl. Jairo Mauricia Canales Lopez ("Lopez Decl."), ECF No. 11-1; Decl. Marissa Baer ("Baer Decl."), ECF No. 11-2.

### C. Relevant Procedural History

Plaintiffs filed their Complaint on May 29, 2024.  Compl., ECF No. 1.  Defendants filed their Answer on July 22, 2024.  Answer, ECF No. 7.  Defendants filed the instant Motion for Partial Summary Judgment on August 8, 2024.  Mot. Part. Summ. J., ECF No. 9.  Plaintiffs filed their Opposition to Defendant's Motion for Partial Summary Judgment ("Opposition") on August 22, 2024.  Opp'n, ECF No. 11.  Defendants filed their Reply in Support of Defendants' Motion for Partial Summary Judgment ("Reply") on August 28, 2024.  Reply, ECF No.13.  On August 28, 2024, Plaintiffs voluntarily dismissed Count Five of the Complaint.  Notice Voluntary Dismissal, ECF No. 9; Order, ECF No. 14.

## II. STANDARD OF REVIEW

The relevant inquiry in the summary judgment analysis is "whether the evidence presents a sufficient disagreement to require submission to a [trier of fact] or whether it is so one-sided that one party must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 251–52 (1986).  The party moving for summary judgment bears the "initial burden of providing admissible evidence of the material facts entitling it to summary judgment."  *Ray Commc'ns, Inc. v. Clear Channel Commc'ns, Inc.*, 673 F.3d 294, 299–300 (4th Cir. 2012) (quoting *Giannullo v. City of New York*, 322 F.3d 139, 140–41 (2d Cir. 2003)).  Where the movant fails to provide such

evidence, "summary judgment must be denied, even if no opposing evidentiary matter is presented, for the non-movant is not required to rebut an insufficient showing." *Id.*

"[A] party may file a motion for summary judgment at any time until thirty days after the close of all discovery." Fed. R. Civ. P. 56(b). However, Federal Rule of Civil Procedure 56(d) also "mandates that summary judgment be denied when the nonmovant 'has not had the opportunity to discover information that is essential to his opposition.'" *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (quoting *Ingle ex rel. Estate of Ingle v. Yelton*, 439 F.3d 191, 195 (4th Cir. 2006)).

### III. DISCUSSION

In their instant Motion for Partial Summary Judgment, Defendants seek summary judgment as to Counts One, Two, Four, and Six of the Complaint. Mem. Supp. Mot. Summ. J. 6, 12, ECF No. 10. As to Counts One, Two, and Four, which allege violations of federal and state labor laws, Defendants argue that Cole Shows's 2021 receipts establish that it is exempt from the relevant regulatory scheme. *Id.* at 6. As to Count Six, which alleges breach of contract, Defendants argue that the H-2B program regulations cannot serve as the basis for the formation of a contract. *Id.* at 12. The Court finds, however, that Defendants fail to provide adequate evidence to warrant summary judgement pursuant to either line of argument. As such, the Court will deny the Motion for Partial Summary Judgment.

### A. The Court Declines to Grant Summary Judgement Based on Undiscovered Evidence

Defendants first argue that summary judgment is appropriate as to Counts One, Two, and Four because Defendant Cole Shows is exempt from the underlying wage laws as a recreational establishment. Mem. Supp. Mot. Summ. J. 10–12. Counts One and Two allege that Defendants failed to adequately pay Plaintiffs pursuant to the FLSA, Compl. ¶¶ 122–143, and Count Four alleges the same under the VOWA, *id.* ¶¶ 155–166. In response, Plaintiffs argue that Defendant

6

Cole Shows seeks summary judgment based on undiscovered evidence that Plaintiffs have not had opportunity to investigate. *See generally* Opp'n, ECF No. 11. As such, Plaintiffs contend that summary judgment is inappropriate at this stage of litigation. The Court agrees with Plaintiffs.

"The FLSA protects 'all covered workers from substandard wages and oppressive working hours.'" *Williams v. Genex Servs., LLC*, 809 F.3d 103, 104–105 (4th Cir. 2015) (quoting *Barrentine v. Ark.-Best Freight Sys., Inc.*, 450 U.S. 728, 739 (1981)). The FLSA imposes a general rule that "employers must pay overtime compensation to employees who work more than forty hours during a seven-day work week" and pay their employees a minimum wage of $7.25 an hour. *Id.*; 29 U.S.C. §§ 206(a)(1)(C), 207(a)(1). Meanwhile, the VOWA creates a state cause of action for all violations of the FLSA. Va. Code Ann. § 40.1-29.2 ("Any employer that violates the overtime pay requirements of the federal [FLSA] . . . shall be liable to the employee for the applicable remedies, damages, or other relief available."). The VOWA incorporates the FLSA's requirements and exemptions such that employers exempt from the FLSA are also exempt from the VOWA. *Id.*

Relevant here, "any employee employed by an establishment which is a[] . . . recreational establishment" is categorically exempt from the FLSA's wage and hour limitations. 29 U.S.C. § 213(a)(3). Accordingly, as argued by Defendants, Counts One, Two, and Four cannot lie against Defendants if, at the time of Plaintiffs' employment, Defendant Cole Shows was a FLSA-exempt recreational establishment. Mem. Supp. Mot. Summ. J. 7–12.

For an employer to qualify as a recreational establishment within the meaning of the FLSA, it must satisfy two elements. First, the employer must demonstrate that its business is within the character of the exemption, i.e., it is a seasonal establishment offering recreation or amusement activities. 51B C.J.S. *Labor Relations* § 1307 (2024); *Ivanov v. Sunset Pools Mgmt., Inc.*, 567 F.

7

Supp. 2d 189, 192 (D.D.C. 2008).  Second, the employer must demonstrate that it satisfies the "receipts test," i.e., that is has an "off-season" and an "on-season."[3]  51B C.J.S. *Labor Relations* § 1307; 29 U.S.C. § 213(a)(3).  The parties do not dispute that Defendant Cole Shows is a carnival, and courts have "consistently noted that the exemption's purpose is to cover . . . seasonal recreational or amusement activities [such as] . . . carnivals."  *Ivanov*, 567 F. Supp. 2d at 192 (quoting *Brock v. Louvers & Dampers, Inc.*, 817 F.2d 1255, 1258 (6th Cir. 1987)).  Thus, the dispositive question is whether Defendant Cole Shows satisfies the receipts test.

An employer satisfies the receipts test if it can show that, "during the preceding calendar year, its average receipts for any six months of such year were not more than 33 ⅓ per centum of its average receipts for the other six months of such year."  *Id.*  In other words, for the year preceding the year of the alleged the FLSA violations, the employer must be able to categorize six months as "off-season" months and six months as "on-season" months.  *See id.*  To fall within the exemption, the total average income for the "on-season" months must be at least three times the average income of the "off-season" months.  *See id.*

To demonstrate Cole Shows's satisfaction of the receipts test during 2022—the year during which Plaintiffs claim Defendants violated the FLSA and the VOWA—Defendant Richard Cole describes Defendant Cole Shows's 2021 receipts in his affidavit.  Cole Aff., ECF No. 10-1.  Based on these described receipts, Defendant Cole Shows made an average of $55,927.73 during its six off-season months in 2021 and averaged more than three-times that during its six on-season months.[4]  *See id.*

---

[3] Defendant-employers may also satisfy the second element via the "duration test," 51B C.J.S. *Labor Relations* § 1307; 29 U.S.C. § 213(a)(3), however, Defendants do not pursue that avenue here.  Mem. Supp. Mot. Summ. J. 7.

[4] Defendant Cole Shows made a total of $335,566.40 during its six off-season months (January, February, March, April, November, and December).  Cole Aff.  This renders an average of $55,927.73 per month.  Conversely, Defendant Cole Shows made a total of $3,852,067.00 during its six on-season months (May, June, July, August,

However, Defendant Cole's affidavit does not end the analysis. As Plaintiff Lopez and Plaintiffs' counsel Marissa Baer swear in their respective affidavits, Plaintiffs were neither aware of the receipts underlying Defendant Cole's affidavit nor have they had the opportunity to discover them. Lopez Decl, ECF No. 11-1; Baer Decl., ECF No. 11-2. And, because Defendant Cole's affidavit does not include copies of Cole Shows's actual receipts, Plaintiffs have no possibility of rebutting Defendants' instant argument.

Federal Rule of Civil Procedure 56(d) requires district courts to deny summary judgment where the nonmovant has "not had the opportunity to discover information that is essential to his opposition." *Pisano*, 743 F.3d at 931. Here, the undiscovered receipts are indeed essential, since their veracity will apparently determine whether Defendants are exempt from the FLSA and, by extension, the VOWA. Thus, Plaintiffs must be afforded the opportunity to discover Defendants' receipts. The Court will accordingly deny the Motion for Summary Judgment as to Counts One, Two, and Four of the Complaint.

**B. Defendants Fail to Provide Evidence in Support of Their Remaining Argument**

Defendants next argue that summary judgment is appropriate as to Count Six because the claim cannot lie against Defendants as a matter of law. Mem. Supp. Mot. Summ. J. 12–15. Count Six advances a breach of contract claim pursuant to Virginia common law. Compl. ¶¶ 179–189. In support, Plaintiffs allege that Defendants had entered into employment contracts with Plaintiffs, each incorporating the "terms and conditions provided in the [DOL] certification, its accompanying attestations, and the law and regulations applicable to the H-2B program." *Id.* ¶ 182–183. Thus, per Plaintiffs, Defendants' alleged violations of the H-2B regulations

---

September, and October), *id.*, which renders an average of $642,011.22 per month—significantly more than three-times $55,927.73.

incorporated into the DOL certification also constituted independent breaches of their employment contracts. *Id.* ¶ 188.

Defendants argue that, as a matter of law, "[Plaintiffs] cannot succeed on their claims for breach of contract because . . . the federal government's H-2B regulations cannot form such a contract." In support, Defendants rely entirely on *Bojorquez-Moreno v. Shores & Ruark Seafood Co.*, a 2015 opinion issued by another court in this district. 92 F. Supp. 3d 459 (E.D. Va. 2015). The *Bojorquez-Moreno* court, deferring to the DOL's interpretation of the H-2B regulations, found that the H-2B application and associated documents did not themselves constitute employment contracts, and, as such, declined to "craft a private right of action" for violations of a DOL certification. *Id.* at 466–68 (citing *Garcia v. Frog Island Seafood, Inc.*, 644 F. Supp. 2d 696, 718–19 (E.D.N.C. 2009) (applying *Auer* deference). Notably, *Bojorquez-Moreno* imported the DOL's interpretation of the H-2B regulations without engaging in a substantive contract analysis. *Id.* (declining to conduct "a unilateral contract analysis").

The Court declines to follow *Bojorquez-Moreno* here, due in part to its merely persuasive nature, but also due in larger part to intervening law. After the Supreme Court's decision in *Loper Bright Enterprises v. Raimondo*, 603 U.S. 369 (2024), district courts are no longer at liberty to merely enforce an agency's interpretation of its regulations, particularly where the interpretation does not "implicate [the agency's] substantive expertise." *United States v. Boler*, 115 F. 4th 316, 323, 323 n.4 (4th Cir. 2024). The DOL has no substantive expertise regarding the existence of a contract between these particular parties. *See Cordova v. R&A Oysters, Inc.*, 101 F. Supp. 3d 1192, 1199 (S.D. Ala. 2015) ("[T]he defendants [do not] explain how a federal agency's thoughts on whether a contract exists does or could preclude the existence of a contract under state law."). Thus, under prevailing law, the Court may not import the pre-*Loper Bright* logic of *Bojorquez-*

*Moreno*.  And, as previously noted, the *Bojorquez-Moreno* court did not reach the question of whether the parties, had, in fact, entered into a contract.  *See Bojorquez-Moreno*, 92. F. Supp. 3d at 467–68.  Even putting its persuasive status aside, robbed of the agency deference that animated it, *Bojorquez-Moreno* does not compel a ruling in favor of Defendants.

Notably, notwithstanding Defendants' argument to the contrary, Plaintiffs do not allege that the H-2B application and Temporary Labor Certification constituted contracts by themselves.  Rather, Plaintiffs allege that the parties had entered into employment contracts which *incorporated* the terms of Defendants' H-2B application, the Temporary Labor Certification, and "the law and regulations applicable to the H-2B program."  Compl. ¶¶ 180–182.  It remains to be seen whether Plaintiffs will produce a contract expressly incorporating those terms or endeavor to establish that the terms were subsumed into their contracts as a matter of law; in either event, the Court will assess the sufficiency of their case once it is properly presented.

To warrant summary judgment, Defendants must provide undisputed evidence sufficient to preclude the possibility of Plaintiffs' success.  Thus, to succeed here, Defendants would have to show that the parties' contract did not include the relevant terms—or that the parties did not form a contract whatsoever.  However, Defendants fail to provide *any* evidence—undisputed or otherwise—in support of their position.  Without such evidence, the Court cannot proceed in its summary judgment analysis.  In fact, by failing to provide any such evidence, Defendants have failed to meet their "initial burden of providing admissible evidence of the material facts entitling it to summary judgment."  *Ray Commc'ns, Inc.*, 673 F.3d at 299–300.  Thus, "summary judgment must be denied, . . . for the non-movant is not required to rebut an insufficient showing."  *Id.*  The Court will accordingly deny Defendants' Motion for Summary Judgment as to Count Six, as well.

11

**IV. CONCLUSION**

For the foregoing reasons, the Court will deny the Defendants' Partial Motion for Summary

Judgment in full.  An appropriate Order shall issue.

_____ /s/ _____
Roderick C. Young
United States District Judge

Date: <u>March 17, 2025</u>
Richmond, Virginia